USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/26/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
                                                                         :

SHENZHEN LANTENG CYBER              :
TECHNOLOGY CO., LTD.,                  :
                                                                        :            1:23-cv-991-GHW
                                         Petitioner,  :
                                                                           :        MEMORANDUM OPINION
                         -v -                        :            AND ORDER
                                                                         :

AMAZON.COM SERVICES, LLC and    :
AMAZON.COM, INC.,                     :
                                                                         :
                                  Respondents.  :
----------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

        Shenzhen Lanteng Cyber Technology Co., Ltd. ("Lanteng") initiated this action seeking to vacate an arbitration award entered in favor of respondents Amazon.com Services LLC and Amazon.com, Inc. (collectively "Amazon"). Amazon cross-petitions the Court to confirm the underlying arbitration award. Because the arbitration award is clearly within the arbitrator's authority and does not reflect a manifest disregard of the law, Lanteng's petition to vacate the arbitration award is DENIED and Amazon's cross-petition to confirm the award is GRANTED.

## I. BACKGROUND

### A. The Business Services Agreement

        Lanteng is Chinese company with its principal place of business in Shenzhen, China. Declaration of Jiaoyu Cheng, Dkt. No. 21 ("Cheng Decl.") ¶ 2. Since June 2018, Lanteng has operated as a third-party seller in Amazon's online marketplace. *Id.* ¶ 3; Declaration of Michael Guerrero, Dkt. No. 28-2 ("Guerrero Decl.") ¶ 9. To sell on Amazon's online marketplace, Lanteng had to agree to Amazon's "Business Solutions Agreement" (the "BSA"). *Id.*; *see also* Dkt. No. 28-3 (BSA).

Amazon asserts that all third-party sellers on the Amazon platform are required to abide by the terms and conditions of the BSA and its incorporated policies. Dkt. No. 27 (the "Opposition") at 2. Amazon's position is that the requirement helps to "maintain the integrity of its only store and brand, which depends on customer trust." *Id.*

As relevant here, the BSA contains provisions that penalize sellers when they engage in fraudulent conduct on the platform. Section 2 of the BSA permits Amazon to withhold payments to sellers who engage in fraud: "If we determine that your account—or any other account you have operated—has been used to engage in deceptive, fraudulent, or illegal activity (including the sale of counterfeit goods), or to repeatedly violate our Program Policies, then we may in our sole discretion permanently withhold any payments to you." BSA § 2.

Section 3 of the BSA grants Amazon authority to block the account of a seller that engages in fraudulent activity:

> We [i.e., Amazon] may suspend or terminate your account or this Agreement immediately if we determine that (a) you have materially breached the Agreement and failed to cure within 7 days of a cure notice . . . ; (b) your account has been, or our controls identify that it may be used for deceptive or fraudulent, or illegal activity . . .

BSA § 3. The BSA also requires sellers to verify their identity at Amazon's request. BSA § P-4 ("We may at any time require you to provide any financial, business or personal information we request to verify your identity").

Third-party sellers like Lanteng are also subject to Amazon's "customer product reviews policies." Dkt. No. 28-4. A seller violates those policies when, among other things, the "seller offers a third party a financial reward, discount, free products, or other compensation in exchange for a review on their product or their competitor's product." *Id.* at 3–4. Amazon has a "zero-tolerance policy" toward violations of the customer review policy: "If we detect any attempts to manipulate customer reviews, we take immediate actions that include, but are not limited to:

immediate and permanent withdrawal of the seller's selling privileges on Amazon and withholding of funds." *Id.* at 4.

The BSA requires that the parties resolve any dispute relating in any way to the BSA or Amazon's services through arbitration.  BSA § 18 ("**Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration as described in this paragraph, rather than in court** . . . .")  *Id.* (emphasis in original).  The contract provides that any "arbitration will be conducted by the American Arbitration Association (AAA) under its commercial rules."  *Id.*  The BSA specifies the governing law as "the Laws of the State of Washington, United States together with the Federal Arbitration Act and other applicable federal law."  *Id.* (Definition of "Governing Laws").

### B. Lanteng's Fraudulent Conduct

Lanteng's account of the events that led to this application begins in 2020.  Lanteng asserts that in August 2020, Amazon accused Lanteng of violating Amazon's customer product reviews policies.  Dkt. No. 20 ("P's Mem.") ¶ 13.  Lanteng asserts that it successfully appealed Amazon's 2020 deactivation decision to Amazon, and after Amazon accepted its "Plan of Action,"[1] Amazon reinstated Lanteng's seller account.  *Id.*

In late 2021, Amazon again blocked Lanteng's account, accusing Lanteng of manipulating customer reviews.  Cheng Decl. ¶ 14; Guerrero Decl. ¶ 10.[2]  When the account was blocked,

---

[1] Lanteng describes the "Plan of Action" as a plan created by sellers who have been accused of a violation of Amazon's policies.  The plan involves explaining the reasons behind the action, how the company plans to resolve it, and measures taken to prevent it from happening in the future.  P's Mem. ¶ 13; *see also* Dkt. No. 18-3.

[2] There is some dispute regarding the date of the suspension:  Lanteng asserts that the account was suspended on June 24, 2021, Cheng Decl. ¶ 11, while Amazon asserts that the account was suspended in September.  Guerrero Decl. ¶ 10.  This dispute is immaterial to the resolution of this motion.

"Amazon withheld $123,622.24 in funds, representing approximately two weeks' worth of funds awaiting disbursement in the seller account." Guerrero Decl. ¶ 13.

Amazon provided Lanteng the opportunity to appeal the suspension of its account. *Id.* Lanteng did so. However, in its appeal, Lanteng "admitted that it manipulated customer feedback by bribing customers in exchange for falsified positive reviews and for the removal of negative reviews." Arbitration Award, Dkt. No. 28-13 (the "Award") at 2; Dkt. No. 28-5, Ex. E at 4–5.

Amazon asked to interview Jiaoyu Cheng, the registered account holder, to verify her identity as the account holder,. Cheng Decl. ¶ 14. According to Amazon, a "person professing to be Jiaoyu Cheng" appeared for the interview but "did not even have the most basic knowledge about the Lanteng organization." Guerrero Decl. ¶ 16. The interviewee "could not correctly answer any basic account registration questions, did not know why the Amazon account had been suspended, and could not speak with knowledge of any element of the Lanteng business." *Id.* Amazon requested that Ms. Cheng participate in a second interview. Ms. Cheng declined. She now contends that she declined to follow through with a second interview because "[she] had already participated in the process." Cheng Decl. ¶ 14.

Upon a review of the facts, however, the arbitrator found that Amazon "presented compelling evidence that Ms. Cheng failed to prove she was the owner or operator of Claimant's account at her IPI interview." Award at 2. The arbitrator also found that Amazon's version of events was "further supported by the lack of knowledge Ms. Cheng had concerning Claimant when she was deposed . . . . Her testimony was not consistent with the declaration that was offered by Claimant to support its position in this arbitration." *Id.* Amazon denied Lanteng's appeal, deactivated its seller account, and froze its funds. P's Mem. ¶¶ 17–18.

In January 2022, Lanteng filed a demand for arbitration with the AAA, seeking to retrieve the withheld funds. *Id.* ¶ 20; *see also* Dkt. No. 28-6 (the "Arbitration Demand"). In its demand,

4

Lanteng asserted that its account had been suspended improperly and that its funds were being improperly withheld. *Id.* Lanteng also contended in the arbitration demand that the BSA was a contract of adhesion that was procedurally and substantively unconscionable. *Id.* ¶ 7

In response to the demand, John Bonello (the "Arbitrator") was appointed to arbitrate the dispute. Dkt. No. 28-7. Lanteng elected to conduct the arbitration by written submissions rather than by an in-person hearing. Dkt. No. 28-9 ¶ 1. The parties then engaged in extensive briefing regarding the dispute and presented evidence to the Arbitrator in support of their respective positions.

In its brief to the arbitrator, Lanteng reiterated its arguments that the BSA was not enforceable. *See* Dkt. No. 28-10 ("Claimant's Arbitration Brief"). Among other things, Lanteng argued that Section 2 of the BSA was procedurally and substantively unconscionable and that the provision should be found to be unenforceable as a penalty provision. *Id.* at 8–9. Lanteng also argued that Amazon had breached the BSA because it had "fail[ed] to disburse sales proceeds and reimbursements." *Id.* at 7. Amazon's opposition brief responded to Lanteng's arguments that the BSA was unconscionable at length. Dkt. No. 28-11 at 7–10. Lanteng renewed its arguments to the contrary in its reply brief. Dkt. No. 28-12 at 8–10.

On October 7, 2022, the Arbitrator issued the final Award. In it, he denied Lanteng's claims in their entirety. The Arbitrator began by addressing the arguments presented by Lanteng regarding the enforceability of the BSA. First, the Arbitrator considered Lanteng's argument that the BSA was unconscionable under Washington law. Award at 1. He concluded that it was not. To reach that conclusion, the arbitrator first evaluated Washington State law. He cited to an *en banc* decision by the Supreme Court of Washington State and, based on it, defined procedural unconscionability as a "lack of meaningful choice, considering all the circumstances surrounding the transaction including the manner in which the contract was entered into." *Id.* (citation omitted). The Arbitrator evaluated

the facts presented to him in the hearing and found that Lanteng "made a choice to enter into the BSA knowing the terms and condition and could have decided not to sell on [Amazon's] platform." *Id.* He determined, therefore, that "[t]he facts do not support a finding of procedural unconscionability with respect to the BSA." *Id.*

The Arbitrator next found that the BSA was not substantively unconscionable. *Id.* He cited to another *en banc* decision of the Supreme Court of Washington State, which held that "[s]ubstantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh." *Id.* (citation omitted) (alteration in the original). Evaluated under governing Washington State law, the Arbitrator found that Lanteng "has failed to prove that section 2 of the BSA was substantively unconscionable." *Id.* The Arbitrator ruled that that there was "nothing one-sided or overly harsh with" Amazon "conditioning disbursements of funds" on Lanteng's compliance with Amazons' seller policies regarding non-deceptive behavior. *Id.* He concluded that the facts "do not support a finding of substantive unconscionability with respect to the BSA." *Id.*

The Arbitrator went on to evaluate Lanteng's argument that Section 2 of the BSA was an unenforceable penalty provision. Ruling against Lanteng, the Arbitrator found that Section 2 of the BSA was a valid liquidated damages provision. *Id.* at 2. With respect to this issue too, the Arbitrator's Award specifically cited to an *en banc* opinion by the Supreme Court of Washington State to support his legal analysis. The Arbitrator concluded that Washington law "favors liquidated damages provisions" and that "courts routinely uphold" such awards "where (1) the amount is 'a reasonable forecast of just compensation for the harm that is caused by the breach,' and (2) the harm is 'incapable or very difficult of ascertainment.'" *Id.* at 2 (citation omitted). He found that the BSA's terms were "a reasonable forecast of the harm caused by a breach of the BSA at the time the parties entered into the BSA" and that the harm caused by a breach of the BSA "was not capable of

6

being assessed at the time the parties entered into the BSA." *Id.* He determined that Section 2 of the BSA did not constitute an unenforceable penalty clause. *Id.*

Finally, the Arbitrator found that Amazon was justified in withholding Lanteng's funds under Section 2 of the BSA because Lanteng had violated the BSA's customer review policies and identity verification requirements. *Id.* He found that Section 2 of the BSA authorized Amazon to withhold Lanteng's funds if Lanteng engaged in deceptive, fraudulent, or illegal activity or violated program policies that are incorporated in the BSA. *Id.* He further found that the BSA and the program policies it incorporated prohibited sellers from offering compensation in exchange for reviews and requires sellers to verify their identity upon Amazon's request. *Id.*

The Arbitrator then reviewed the facts, including the fact that Lanteng "admitted . . . that it manipulated customer feedback by bribing customers in exchange for falsified positive reviews and removal of honest negative ones," and found that Lanteng had violated Amazon's customer review policies. *Id.* He also reviewed the facts concerning Amazon's request for Lanteng to verify its identity, finding that Lanteng failed to verity its identity as required under the BSA. *Id.* He determined that Lanteng's violations of these policies placed Amazon "well within its contractual rights to withhold [Lanteng's] funds." *Id.* As a result, the Arbitrator denied Lanteng's claim for breach of contract and its remaining claims. Lanteng asserts that as a consequence of the Award, Amazon has been awarded $380,508.61 of its funds. P's Mem. at 15.

### C. Procedural History

On January 7, 2023, Lanteng filed a petition to vacate the Award in the Supreme Court of the State of New York, County of New York. *See* Dkt. No. 1. Amazon removed the action to this Court on February 6, 2023. *See id.* at ¶¶ 4–15. On March 1, 2023, the Court held a conference concerning this case. Dkt. No. 7. During that conference, the Court observed that Lanteng's briefing relied on New York State law. As a result, the Court offered Lanteng the opportunity to

7

submit a revised brief supported by appropriate references to the federal law that would govern the Court's evaluation of the application. *See* Dkt. No. 24 at 27:11–17. Lanteng said that it wished to do so. As a result, the Court granted Lanteng additional time to file an updated brief and supporting materials informed by the governing legal standard.

On April 12, 2023, Lanteng filed an amended brief in supports of its petition to vacate the Award. *See* P's Mem. Lanteng's new memorandum of law continues to cite to state law, rather than federal law for the governing standard for vacatur of the Award.[3] *See, e.g.*, P's Mem. at 13 (citing to the New York State CPLR § 7511 as providing the grounds for vacatur of the award). On May 10, 2023 Amazon filed its opposition to the Petition and filed a cross-petition to confirm the Award pursuant to 9 U.S.C. § 9. Dkt. No. 26 (notice of motion); Dkt. No. 27. On May 19, 2023, Lanteng filed its reply brief, Dkt. No. 29 (the "Reply"), and on June 5, 2023, Amazon filed a sur-reply, Dkt. No. 32.

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction to resolve this dispute. "The FAA does not 'independently confer subject matter jurisdiction on the federal courts.'" *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins.*, 668 F.3d 60, 71 (2d Cir. 2012) (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009)). Therefore, "'[t]here must be an independent basis of jurisdiction before a district court may entertain petitions' to confirm or vacate an [arbitration] award." *Id.* (quoting *Durant et al.*, 565 F.3d at 63).

Shortly after Amazon removed this action, Lanteng filed a pre-motion conference request letter seeking leave to move to remand the action to state court. *See* Dkt. No. 10. In its pre-motion

---

[3] The Court does not know why Lanteng did not revise its brief to address the federal legal standard notwithstanding the Court's extension of an opportunity for it to do so. Lanteng has not provided an argument that the Court should evaluate this application under the state CPLR, rather than governing federal legal standards.

letter, Lanteng argued that the Second Circuit's decision in *Scandinavian*, 668 F.3d 60, —which recognized federal subject matter jurisdiction over actions that are governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "Convention")—does not apply because the arbitration here was "entirely domestic." *See id.* After an in-depth discussion of its position during the pre-motion conference, Lanteng ultimately reasonably chose not to move to remand. Still, the Court has an independent duty to ensure it has jurisdiction. Fed. R. Civ. P. 12(h)(3).

As explained below, the Court has two bases for subject matter jurisdiction here. The Court has jurisdiction under 9 U.S.C. § 203 because this action falls under the Convention. The Court also has diversity jurisdiction under 28 U.S.C. § 1332(a)(2) because this action involves citizens of a State (Amazon) and citizens or subjects of a foreign state (Lanteng) and the amount in controversy exceeds $75,000.

### 1.    9 U.S.C. § 203

The Court has subject matter jurisdiction over this case under 9 U.S.C. § 203. That statute provides the following:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

9 U.S.C. § 203; *see also Scandinavian*, 668 F.3d at 71 (noting that 9 U.S.C. § 203 "provides federal jurisdiction over actions to confirm or vacate an arbitral award that is governed by the Convention").

The Convention applies to "the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought," as well as to "awards *not considered as domestic awards* in the State where their recognition and enforcement are sought." *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 18 (2d Cir.

1997) (quoting Convention art. I(1)).  "The Convention does not define nondomestic awards." *Id.* However, as relevant here, the Second Circuit defines nondomestic awards to include an award made in the United States and decided under the laws of the United States but which "involves . . . entities that are not U.S. citizens." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 73 (2d Cir. 2017); *see also Yusuf*, 126 F.3d at 19 ("[A]wards 'not considered as domestic' denotes awards which are subject to the Convention not because made abroad, but because made within the legal framework of another country, e.g., pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction." (quoting *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir. 1983))).

Lanteng is a Chinese company with its principal place of business in China.  Therefore, the Convention governs this case.  *See Scandinavian*, 668 F.3d at 71 ("The New York Convention applies in this case because Scandinavian is a foreign corporation." (citing 9 U.S.C. § 202)).[4]

### 2. 28 U.S.C. § 1332(a)(2)

The Court also has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(2).  That statute provides the following in pertinent part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- . . . (2) citizens of a State and citizens or subjects of a foreign state . . . .

---

[4] In its pre-motion letter requesting leave to remand this action to state court and in the pre-motion conference scheduled to discuss that motion, Lanteng presented a number of arguments to support its contention that this matter is not governed by the Convention.  Lanteng first argued that the Court should not follow *Scandinavian* notwithstanding the fact that it is governing law in this Circuit, because "some circuit courts have voiced disagreements with *Scandinavian* rulings." Dkt. No. 10 at 1.  Even were this true, it would be irrelevant.  Second Circuit precedent is binding on this Court.  In any event, Lanteng failed to cite to any federal courts of appeals that disagree with Scandinavian.  The only federal appellate case Lanteng directly cited in support of its position—*United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001)—was a criminal appeal involving a motion to suppress and says nothing about *Scandinavian* or the Convention.  *See* id.  Lanteng also argued that *Scandinavian* does not apply because the arbitrators in that case were certified by a foreign institution, whereas the arbitration in this action was conducted by an American arbitrator through the American Arbitration Association applying Washington State law.  Dkt. No. 10 at 1–2.  As detailed above, the fact that the arbitration was conducted in the United States and applied United States law does not make the arbitration domestic if it involves entities that are not United States citizens.  *See CBF*, 850 F.3d at 73.  Lanteng reasonably elected not to pursue these meritless arguments.

28 U.S.C. § 1332(a)(2). "Section 1332 requires 'complete diversity,' meaning that 'all plaintiffs must be citizens of states diverse from those of all defendants.'" *Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (quoting *Pa. Pub. Sch. Emps.' Retirement Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 118 (2d Cir. 2014)). Here, Amazon is a citizen of a state—Washington—and Lanteng is a citizen of a foreign state—China. As a result, there is complete diversity. The amount in controversy exceeds $75,000. Therefore, diversity jurisdiction permits the Court to hear this case as well.

## B. Legal Standard for the Confirmation of an Arbitral Award

Under the Convention, a district court "shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005) (quoting 9 U.S.C. § 207). "The party opposing enforcement of an arbitral award has the burden to prove that one of the seven defenses under the New York Convention applies." *Olin Holdings Ltd. v. Libya*, 73 F.4th 92, 108 (2d Cir. 2023) (quoting *Encyclopaedia Universalis*, 403 F.3d at 90). "The burden is a heavy one, as 'the showing required to avoid summary confirmance is high.'" *Id.* (quoting *Encyclopaedia Universalis*, 403 F.3d at 90).

Where an arbitration award is rendered in the United States, "the domestic provisions of the FAA also apply." *Scandinavian*, 668 F.3d at 71; *see also Zurich Am. Ins. v. Team Tankers A.S.*, 811 F.3d 584, 588 (2d Cir. 2016) ("The award in this case having been rendered in the United States, available grounds for vacatur include all the express grounds for vacating an award under the FAA." (citing *Yusuf*, 126 F.3d at 23)). "Under the FAA, courts may vacate an arbitrator's decision 'only in very unusual circumstances.'" *Oxford Health Plans LLC v. Sutter,* 569 U.S. 564, 569 (2013) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995)). Section 10(a) of the FAA sets forth grounds for vacating an arbitration award. *Jock v. Sterling Jewelers Inc.,* 646 F.3d 113, 121 (2d Cir. 2011). Under § 10(a), an award may be vacated:

11

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition to the grounds for vacatur specified in § 10(a), the Second Circuit has recognized an additional, "judicially-created ground, namely that 'an arbitral decision may be vacated when an arbitrator has exhibited a manifest disregard of law.'" *Jock*, 646 F.3d at 121 (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002)). "To vacate an award on the basis of a manifest disregard of the law, the court must find 'something beyond and different from mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Id.* at 121 n.1 (quoting *Westerbeke*, 304 F.3d at 208). "The two part showing requires the court to consider, first, 'whether the governing law alleged to have been ignored by the arbitrators was well defined, explicit, and clearly applicable,' and, second, whether the arbitrator knew about 'the existence of a clearly governing legal principle but decided to ignore it or pay no attention to it.'" *Id.* (quoting *Westerbeke*, 304 F.3d at 209).

### C. Analysis

The Award must be confirmed. Lanteng challenges the Award by arguing that the Arbitrator acted in manifest disregard of the law and that he exceeded his authority. In its reply, Lanteng added an argument that the Award should be vacated because the BSA violates the public policy of the State of Washington. Lanteng has not met its burden to show that vacatur is appropriate on any of these grounds, for the reasons the Court takes up below.

### 1.     The Arbitrator Did Not Manifestly Disregard the Law

Lanteng has not shown that the Arbitrator acted in manifest disregard of the law.  A party seeking to vacate an arbitration award on this basis must show "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." *Westerbeke*, 304 F.3d at 208 (quoting *Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967)).  "An arbitral award may be vacated for manifest disregard of the law 'only if a reviewing court . . . finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.'"  *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004) (quoting *Banco de Seguros del Estado v. Mut. Marine Off., Inc.*, 344 F.3d 255, 263 (2d Cir. 2003)) (other internal quotation marks omitted).  "A federal court may not conduct a reassessment of the evidentiary record . . . ." *Id.* at 193.  Even if a court disagrees with the arbitrator's decision on the merits, "if there is a *barely colorable justification* for the outcome," then the award should be enforced.  *Id.* at 190 (quoting *Banco de Seguros*, 344 F.3d at 260).  In short, "the doctrine 'gives extreme deference to arbitrators.'"  *Id.* at 189 (quoting *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997)).

The Arbitrator did not ignore the governing law.  As described above, Lanteng's argument that the BSA was unenforceable was thoroughly briefed to the Arbitrator.  The Arbitrator responded to each argument in his Award.  In doing so, he pointed to precedential opinions issued by the Supreme Court of Washington State.  The Arbitrator did not agree with the position advocated by Lanteng, but it cannot reasonably be claimed that he ignored governing law.

In support of its request to vacate the Award based on its assertion that the Arbitrator acted in manifest disregard of the law, Lanteng reiterates the arguments that it pursued before the Arbitrator:  Lanteng argues that Section 2 of the BSA is unenforceable under Washington state law because it is procedurally unconscionable, substantively unconscionable, and constitutes an

13

unenforceable penalty clause.  P's Mem. ¶¶ 34–48.  As described above, the Arbitrator addressed each of these arguments in turn.  *See* Dkt. No. 28-13 at 1–2.  In its briefing to the Court, Lanteng cites to arbitration awards that have reached a different conclusion than the Arbitrator regarding the enforceability of Section 2 of the BSA.  *See* Dkt. No. 18, Exs. A-2, A-3, A-4, A-8, A-9, P-15, P-16. However, the fact that other arbitrators ruled differently does not justify vacatur of the Award. Even if this Court disagreed with the Arbitrator's analysis, that would not provide a basis to vacate the Award.  *See Wallace*, 378 F.3d at 190 (explaining that "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law"). The Court does not sit as a court of appeal with respect to the Arbitrator's legal conclusions.  "[T]he doctrine 'gives extreme deference to arbitrators.'"  *Id.* at 189 (quoting *DiRussa*, 121 F.3d at 821). Lanteng has not shown that the arbitrator was aware of but ignored a clearly applicable governing legal principle.

### 2.     The Arbitrator Did Not Exceed His Authority

Lanteng's argument that the Arbitrator exceeded his authority has no merit.  The Second Circuit has "'consistently accorded the narrowest of readings' to section 10(a)(4) permitting vacatur where the arbitrator has exceeded her powers."  *Jock*, 646 F.3d at 122 (quoting *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85 (2d Cir. 2009)).  "This is 'especially' true when section 10(a)(4) is invoked to challenge an award deciding 'a question which all concede to have been properly submitted in the first instance.'"  *Id.* (quoting *DiRussa*, 121 F.3d at 824).

The focus of the inquiry in challenges to an arbitration award under Section 10(a)(4) is "whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, *not whether the arbitrators correctly decided that issue*."  *Id.* (quoting *DiRussa*, 121 F.3d at 824).  The Court will "uphold an award so long as the arbitrator 'offers a barely colorable justification for the outcome reached.'"  *Id.* (quoting *ReliaStar*, 564 F.3d at 86).  "In other

words, 'as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' a court's conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does not suffice to overturn his decision.'" *ReliaStar*, 564 F.3d at 86 (quoting *United Paperworkers Int'l Union, AFL-CIO v. MISCO, Inc.*, 484 U.S. 29, 38 (1987).  An arbitrator "may exceed her authority by, first, considering issues beyond those the parties have submitted for her consideration, or, second, reaching issues clearly prohibited by law or by the terms of the parties' agreement."  *Jock*, 646 F.3d at 122.

There is no dispute that the Arbitrator had the power under the arbitration agreement to reach the issues decided in the Award.  The BSA's arbitration provision was broad in scope.  It unambiguously vested the Arbitrator with broad authority to resolve any dispute "relating in any way" to the BSA.  BSA ¶ 18 ("**Amazon and you both consent that any dispute with Amazon or its Affiliates or claim relating in any way to this Agreement or your use of the Services will be resolved by binding arbitration** . . . .")  The arbitration clause provided the Arbitrator the power to decide "any subsequent construction of the contract and of the parties' rights and obligations under it."  *See McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988).

Nor can there be any dispute that the issues resolved in the Award were submitted to the Arbitrator for decision.  Lanteng initiated the arbitration for the express purpose of obtaining a ruling regarding what it described as Amazon's "wholly unjustified indefinite withholding of sales proceeds . . . ."  *See* Lanteng's Arbitration Demand, Dkt. No. 28-6, ¶ 23.  And, as described above, the parties fully briefed issues related to Amazon's authority to seize the funds under the BSA and the enforceability of the BSA.  In sum, the arbitrator was acting within his authority when he issued the Award.

15

The Arbitrator also had a colorable justification under Washington law to rule as he did. He reviewed the factual record presented to him by the parties. He evaluated the text of the BSA and relevant precedent. He had more than a colorable basis to conclude that the text of the BSA permitted Amazon to withhold funds from Lanteng. As described above, Lanteng does not contest that the language of the agreement permits Amazon to withhold funds as a remedy, but, rather, that this provision of the BSA is unenforceable. The Arbitrator evaluated binding precedent by the Supreme Court of the State of Washington to reach the conclusion that the BSA was enforceable. Therefore, the Arbitrator had more than a colorable justification to issue the Award.

Lanteng's arguments boil down to a contention that the Arbitrator did not "[get] it right"—but such an error, even if one existed, would not justify vacatur of the award. *See Jock*, 646 F.3d at 124. Lanteng argues that the Arbitrator exceeded his authority by allowing Amazon to retain the funds in Lanteng's seller account without "presenting any evidence regarding its damages" or "fil[ing] any counterclaim for damages." P's Mem. ¶ 32. These contentions, even if accurate, would not justify vacatur of the Award: The Arbitrator had the authority to determine whether Amazon was required to return those funds to Lanteng—it was the issue that Lanteng requested that he resolve.[5]

It is not this Court's role to determine whether the Arbitrator made the right decision, but simply whether the decision was within the scope of his power. The issue of Amazon's retention of Lanteng's funds under the BSA was squarely presented to the Arbitrator, and Lanteng has not shown that the parties' arbitration agreement or the law prohibited the Arbitrator from deciding that issue. Lanteng's arguments that the Arbitrator ruled incorrectly are misplaced and do not suffice to vacate the Award. *See Jock*, 646 F.3d at 124 ("[I]t is not for the district court to decide whether the

---

[5] Lanteng's argument also ignores the portion of the Award in which the Arbitrator determined that the provision of the BSA constituted a valid liquidated damages provision.

arbitrator 'got it right' when the question has been properly submitted to the arbitrator and neither the law nor the agreement categorically bar her from deciding that issue.").

### 3. Enforcement of the Award Would Not Violate Public Policy

Lanteng argues for the first time in its reply brief that the arbitration award should be vacated on the grounds that the BSA violates Washington State's public policy. *See* Reply at 15–18. Lanteng points to a bankruptcy court decision in the District of Arizona that, Lanteng contends, applied a six-factor balancing test used by Washington State courts to determine whether a contract should be declared invalid on public policy grounds. *See* Reply at 15. Lanteng argues that the bankruptcy court's analysis should be applied in this case and that the Court should rule that "*Section 2 is unenforceable as violative of Washington's public policy*." *Id.* at 18. Lanteng contends that the Court should vacate the Award on that basis. *Id.*

Lanteng's delay in raising this argument alone warrants its rejection. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Fisher v. Kanas*, 487 F. Supp. 2d 270, 278 (E.D.N.Y. 2007), *aff'd,* 288 F. App'x 721 (2d Cir. 2008). In any event, Lanteng's argument does not justify vacatur of the Award.

Moreover, this is not a question for the Court to address in the first instance. If Lanteng failed to raise this issue with the Arbitrator, "the issue is forfeited." *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998). Again, the Court does not sit as a super-court of

appeals with respect to the Arbitrator's Award. As described above, the Arbitrator did not act in manifest disregard of the law.[6]

### 4. Amazon's Cross-Petition to Confirm Is Granted

Amazon cross-petitions the Court to confirm the Award pursuant to 9 U.S.C. § 9. Dkt. No. 26 at 1. "When a party seeks confirmation of an arbitral award under the New York Convention, '[t]he court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'" *Olin Holdings*, 73 F.4th at 108 (alteration in original) (quoting 9 U.S.C. § 207). "An arbitration award should be confirmed 'unless the award is vacated, modified, or corrected.'" *Bogar v. Ameriprise Fin. Servs., Inc.*, No. 1:16-CV-7199-GHW, 2017 WL 1745566, at *4 (S.D.N.Y. May 4, 2017) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006). "Due to the parallel natures of a motion to vacate and a motion to confirm an arbitration award, denying the former implies granting the latter." *L'Objet, LLC v. Limited*, No. 11 CIV. 3856 LBS, 2011 WL 4528297, at *3 (S.D.N.Y. Sept. 29, 2011). Accordingly, because Lanteng has not shown that any of the grounds for refusal or deferral of enforcement of the Award apply, Amazon's motion to confirm the Award is granted.

---

[6] Lanteng did not argue that the Award should be vacated pursuant to the public policy exception incorporated in the Convention. "[T]his public policy exception is to be construed very narrowly and should be applied only where enforcement would violate our most basic notions of morality and justice." *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998). *Id.* (citations and internal quotation marks omitted). "The party opposing enforcement of the arbitration award has to announce some explicit public policy of the country or state where the award is to be enforced that is well defined and dominant, and . . . ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *See PB Life & Annuity Co. v. Universal Life Ins. Co.*, No. 20-CV-2284 (LJL), 2020 WL 4369443, at *10 (S.D.N.Y. July 30, 2020) (cleaned up) (citations omitted). Important here, this exception asks whether enforcement of the award would violate public policy, not whether the underlying contract violates public policy. *See PB Life*, 2020 WL 4369443, at *10 ("This Court must determine whether the award itself, as contrasted with the reasoning that underlies the award, creates an explicit conflict with other laws and legal precedents and thus clearly violates an identifiable public policy." (cleaned up) (quoting *Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998)); *see also Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (distinguishing award from underlying contract). Lanteng's motion does not begin to meet this high standard. Lanteng's argument is that the BSA—the contract—is unenforceable under Washington State law, not that enforcement of the award would violate public policy. Lanteng fails to identify any explicit public policy that would be violated or to show that enforcement of the Award "would violate our most basic notions of morality and justice." *Europcar*, 156 F.3d at 315 (citation and internal quotation marks omitted); *see also PB Life*, 2020 WL 4369443, at *10 (explaining that "general considerations of supposed public interests" does not suffice (citation omitted)).

### III. CONCLUSION

For the reasons stated above, Lanteng's petition to vacate the Award is DENIED, and Amazon's cross-petition to confirm the Award is GRANTED. The Clerk of Court is directed to terminate the motions pending at Dkt. Nos. 19 and 26, to enter judgment in favor of Amazon, and to close the case.

SO ORDERED.

Dated: September 26, 2023
      New York, New York

_____
GREGORY H. WOODS
United States District Judge